Brad J. Brown
CROWLEY FLECK PLLP
900 N. Last Chance Gulch, Ste. 200
P.O. Box 797
Helena, MT 59624-0797
Telephone: (406) 449-4165
Facsimile: (406) 449-5149
Email: bbrown@crowleyfleck.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| | Case No. 1:22-MC-00008-BLG-SPW-TJC |
| IN RE SUBPOENA OF RICHARD SEDDON. | **PROJECT VERITAS'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION** |

This Motion to Quash and its objections are filed by Project Veritas in response to a non-party subpoena (the "Subpoena") served by the American Federation of Teachers Michigan ("AFT Michigan"), a teacher's union based in Detroit, Michigan. *See* Klein Declaration, **Exhibit A**. The Subpoena was issued in the case *AFT Michigan v. Project Veritas, et al.*, Case No. 17-cv-13292, currently pending in the Eastern District of Michigan (the "Lawsuit"). As set forth more fully below, this Court is the proper venue for this motion.

Discovery in the Lawsuit closed on June 30, 2020, nearly two years ago. Despite this fact, AFT Michigan served a non-party subpoena under Rule 45, seeking

the deposition and a variety of documents from a non-party that AFT Michigan has stated it attempted to serve prior to the close of discovery. The Federal Court in Michigan has issued an order permitting AFT Michigan to take this deposition. *See* Klein Decl., **Exhibit B** (Opinion and Order Granting Plaintiff's Motion to Take Deposition From R. Seddon). But along with the Subpoena for a deposition, AFT Michigan also included improper and impermissible document requests that are overly broad, seek privileged and confidential information, and that attempt to circumvent prior orders of the court in which the Lawsuit is pending.

This Court has the authority to review this motion to quash the Subpoena, as the Subpoena is to be complied with in this jurisdiction. Fed. R. Civ. P 45(d)(3); Klein Decl., Exh. A at 2. The Subpoena is facially overbroad, expressly seeks privileged information, and is in direct contravention of prior orders of the Eastern District of Michigan. AFT Michigan previously sought similar information from Project Veritas, only to have such attempts objected to or even denied by the court hearing the Lawsuit. Moreover, in the new Subpoena, AFT Michigan seeks information that it conceded (or, at least, did not contest) was privileged under the First Amendment. Simply put, AFT Michigan is now attempting to abuse the subpoena process by seeking from a third-party the same documents it has been told or acknowledged that it cannot receive in this matter.

As such, the Subpoena should be quashed.

## I.    Background

Project Veritas is a nonprofit journalism enterprise that investigates and exposes corruption, dishonesty, self-dealing, waste, fraud, and other misconduct in both public and private institutions to achieve a more ethical and transparent society. It does so in large part via undercover journalism. In the summer of 2017, a Veritas undercover journalist named Marisa Jorge investigated AFT Michigan at its headquarters in Detroit, Michigan, by posing as an unpaid intern. During that investigation, Jorge recorded a conversation about a teacher accused of sexually abusing a child. On or about September 28, 2017, AFT Michigan sued Jorge and Project Veritas in Michigan state court, which Veritas removed to the United States District Court for the Eastern District of Michigan on October 6, 2017. *See* Klein Decl., **Exhibit C** (Second Amended Complaint dated July 19, 2018).

For several months, AFT Michigan's suit focused on preventing Jorge and Project Veritas from publishing the results of the investigation by seeking an improper prior restraint of speech via a temporary restraining order or preliminary injunction. The Eastern District of Michigan rejected these efforts, and Veritas published its report on AFT Michigan as part of a series of investigations into teachers unions on May 9, 2018. *AFT Michigan v. Project Veritas*, No. 17-CV-13292, 2018 WL 2111880, at *1 (E.D. Mich. May 8, 2018); *see BREAKING:*

*Alleged Child Molester Paid Off in MI AFT Teachers Union Negotiation*, YOUTUBE, May 9, 2018, https://youtu.be/mQJpIvbLrd0.

After the court's dismissal of several of AFT Michigan's claims, the remaining counts against Jorge and Project Veritas are: fraudulent misrepresentation, trespass, illegal recording of conversations, breach of duty of loyalty, and conspiracy. *See* Klein Decl., Exh. C. The parties engaged in discovery from October 2018 through June 30, 2020. *See, e.g.*, Klein Decl., **Exhibits D, E** (Project Veritas Responses to AFT Michigan's Requests for Production of Documents). Discovery was completed nearly two years ago, but for objections either party has filed in response to prior magistrate opinions and orders that are still pending before the Eastern District of Michigan.

One of those objections was filed by Project Veritas, objecting to an opinion by the magistrate judge ordering the disclosure of some—though not all—of Project Veritas's donors' identities. *See* Klein Decl., **Exhibit F** at 15-34 (July 2, 2020 Opinion and Order on Non-Party Movant Weingarten's Motion for Protective Order, Defendants' Motion to Compel and Plaintiff's Motion to Compel). As will be discussed below in more detail, although the magistrate ordered a limited subset of Project Veritas donors' identities to be disclosed, the magistrate expressly held that AFT Michigan is *not* entitled to know the identities of all Project Veritas donors or donors with no connection to its investigation of AFT Michigan. Moreover, the

magistrate's order is now under review by the judge due to objections by Project Veritas based on the clear constitutional prohibitions on such compelled discovery.

On or about June 10, 2021, AFT Michigan claimed to have served a Rule 45 subpoena upon Richard Seddon, a nonparty who worked as a contractor for Project Veritas for a limited time and who had a limited role supervising Ms. Jorge during only part of her investigation of AFT Michigan. *See* Klein Decl., **Exhibit G** (Subpoena to Richard Seddon dated June 10, 2021). On July 22, 2021, AFT Michigan filed a motion for leave to depose Seddon, which the federal court in Michigan granted, ruling that it would "extend the discovery deadline for the limited purpose of allowing AFT to depose Mr. Seddon." Klein Decl., Exh. B at 11.

On May 25, 2022, AFT Michigan gave notice to the Veritas parties under Rule 45(a)(4) that it was going to re-issue a subpoena to non-party Seddon. Klein Decl., Exh. A. Notably, AFT Michigan expanded its document requests from its initial subpoena—the one that it provided in its request to the Eastern District of Michigan to pursue the deposition—to the overly broad requests at issue here. *Cf.* Klein Decl., Exh. A at 5 *with* Exh. G. The Subpoena's requests seek privileged and protected information that should not be requested from a third-party. Moreover, the Subpoena goes beyond the "limited purpose of allowing AFT to depose Mr. Seddon" that was permitted by the Eastern District of Michigan.

It is Project Veritas's understanding from AFT Michigan that this broadened Subpoena has been served on the non-party deponent. Project Veritas now moves to quash that Subpoena.

## II.    Legal Standard

Motions to quash are properly brought (indeed, must be brought) in the court for the district within which the subpoena in question must be complied. Fed. R. Civ. P. 45(d)(3)(A). The Subpoena in question seeks a deposition and the production of documents in Billings, Montana. Klein Decl., Exh. A at 2. Therefore, this Court has the authority to review this motion to quash.

Rule 45 states that an issuing court *must* quash or modify a subpoena that (1) requires disclosure of privileged or other protected matter, if no exception or waiver applies, or (2) subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." (emphasis added)). Parties have standing to challenge subpoenas to non-parties where, as here, the subpoena commands disclosure of documents or information over which the party claims a personal right or privilege. *See, e.g.*, *CQI, Inc. v. Mountain W. Farm Bureau Ins. Co.*, No. CV 08-134-BLG-CSO, 2010 WL 11530839 at *2 (D. Mont. Aug. 13, 2010); *see also Blotzer v. L-3 Communications Corp.*, 287 F.R.D. 507, 509 (D. Ariz.

2012) (holding that plaintiff's employee had standing to move to quash subpoena to his former employers seeking confidential records).[1]

This Court recently examined this very issue in *BNSF Railway Co. v. Center for Asbestos Related Disease, Inc.*, 2022 WL 1442854 (D. Mont. May 6, 2022). There, the Court clearly stated that a subpoena to a non-party "must avoid requiring 'the disclosure of privileged or other protected matter.'" *Id.* at *2. "If a rule 45 subpoena runs afoul of these limitations it **must** be modified or quashed." *Id.* (emphasis added). Additionally, "Rule 45 is not designed to provide an end-run around the regular discovery process under Rules 26 and 34." *Id.* at *4.

"[W]hen a party objects to enforcement of a subpoena, the burden is upon the party seeking the production"—here, AFT Michigan—"to show 'good cause'—that is, that the requested documents are necessary to establish his claim or defense, or that denial of production would unduly prejudice the preparation of his case or cause

---

[1] "Courts in this Circuit have recognized" that a party has standing to object to a subpoena "if it believes its own interest is jeopardized by discovery sought from a third party . . . ." *CQI, Inc. v. Mountain West Farm Bureau Ins. Co.*, 2010 WL 11530839 at *2 (D. Mont. Aug. 13, 2010); *see also Los Angeles Memorial Coliseum Commission v. NFL*, 89 F.R.D. 489, 494–95 (C.D. Cal. 1981) (motion to quash based on privileged materials being sought from third-parties is appropriate in the 9th Circuit). This has also been recognized by other federal courts across the country. *See, e.g.*, *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 443 n.12 (D. Md. 2012); *Atlantic Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 398 (N.D. Ill. 2002) ("While a party ordinarily has no standing to object to a subpoena issued to a non-party, that general rule does not apply where the party claims some personal right or privilege with regard to the documents sought").

him hardship or injustice." *U.S. v. American Optical Co.*, 39 F.R.D. 580, 583 (N.D. Cal. 1966). But if the purpose of an out-of-state non-party subpoena is to circumvent prior orders of the district court where the matter from which the subpoena stems is pending, then such a subpoena is improper and should be quashed. *In re Elect. Weld Steel Tubing Antitrust Litig.*, 512 F.Supp. 81, 83–84 (N.D. Ill. 1981).

III. **The Subpoena Should be Quashed Because it Seeks Privileged Material, is in Contravention of Prior Orders in this Case, is Overly Broad, and Circumvents the Regular Discovery Process.**

A. **The Subpoena Expressly Asks for Privileged and Constitutionally Protected Donor Information.**

As noted above, Rule 45(d)(3)(a) states that an issuing court *must* quash or modify a subpoena that requires disclosure of privileged or other protected matter. And the Subpoena does just that by asking for broad information about Project Veritas's donors. Klein Decl., Exh. A at 5 (Request #1). Moreover, the party that issued the subpoena—AFT Michigan—knows full well that the materials sought are privileged. Indeed, it sought the same broad donor information in the underlying case and its attempt was denied by the Eastern District of Michigan. *See* Klein Decl., Exh. F at 34. Nonetheless, it now attempts an end-run around orders issued in the governing court by using the authority of this Court to seek that which it has already been denied.

Although discovery is generally broad, the constitutional right to freedom of association outweighs the need for disclosure of donor information. *NAACP v.*

*Alabama*, 357 U.S. 440, 460-67 (1958) (the NAACP did not have to produce its membership list because production would result in "the likelihood of a substantial restraint upon" the right to freely associate). The "[f]reedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998). Further, that right includes the right to make financial contributions to further a common goal. *Buckley v. Valeo*, 424 U.S. 1, 22 (1976). Thus, disclosure of information may be inappropriate when it will adversely affect an organization's ability "to pursue [] collective efforts to foster beliefs" and may "induce members to withdraw" or "dissuade others from joining . . . ." *NAACP*, 357 U.S. at 462–63.

Under the First Amendment, discovery potentially infringing on speech or associational rights must go to the "heart of the matter"—that is, the information must be necessary to prove the party's case—before it is ordered to be disclosed. *Tree of Life Cristian Schools v. City of Upper Arlington*, 2012 WL 831918, *3 (S.D. Ohio March 12, 2012) (quoting *Anderson v. Hale*, 2001 WL 503045 at *4 (N.D. Ill. May 10, 2011)). Thus, it must be "highly relevant" and actually be necessary for the adjudication of claims and must be proven to be such ***before*** disclosure is entertained. Mere speculation that information would be useful does not suffice. *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981).

Throughout the country, federal courts have protected litigants against compelled disclosure based on these very concerns over the freedom of association. *See, e.g.*, *NAACP*, 357 U.S. at 460–62 ("Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association"); *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) ("some probability" that disclosure will lead to harassment sufficient to protect against compelled disclosure); *Hastings v. North East Ind. Sch. Distr.*, 615 F.2d 628, 632 (5th Cir. 1980) (compelled disclosure of members inappropriate where allegations were limited to named parties and disclosure would not aid in court evaluating claims about "dues loss, stifled growth, harassment, and intimidation"); *Buckley*, 424 U.S. at 71–75 (minor political parties need not comply with disclosure requirements due to First Amendment concerns); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (denying disclosure of internal campaign communications); *Tree of Life Christian Schs.*, 2012 WL 831918 at *3–4 (denying disclosures of donor information because it could damage the donor-donee relationship); *Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 206 (S.D. W.Va. 2011) (denying disclosure of individuals who aided or abetted protestors); *Ohio Organizing Collaborative v. Husted*, 2015 WL 7008530 at *3–4 (S.D. Ohio 2015) (denying disclosure of financial information related to the Democratic Party); *AFL-CIO v. Federal Election Com'n*, 333 F.3d 168, 176–77 (D.C. Cir. 2003) (denying disclosure of a group's internal documents);

*Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 706 F.2d 1488, 1497 (7th Cir. 1983) (denying disclosure of medical association's membership list); *In re Heartland Inst.*, 2011 WL 1839482, at *2 (N.D. Ill. May 13, 2011) ("there is a right to free association, which is implicated when an organization is compelled to disclose its list of members or donors, causing a chilling effect on the organization.").

AFT Michigan knows of this broad principle against discovery of donor information and constitutional protections of same, because it has been provided the above legal precedent time and again. Nonetheless, its Subpoena attempts to impose such broad and unconstitutional requests onto a third-party, hoping to get what it has been denied so far, and to use the auspices of this Court to so.

The Subpoena in question demands that a non-party produce "[a] copy of **any** correspondence sent or received" for a one-and-one-half year period between the non-party and "**any** donor to Project Veritas . . . ." Klein Decl., Exh. A at 5 (Request #1) (emphasis added). Nowhere is there any qualification that such information must be or is relevant, and nowhere is there any regard for the constitutional rights of Project Veritas and its donors to maintain their anonymity. Rather, AFT Michigan hopes it can just slide this request past the parties and the courts and get a third-party to perhaps unwittingly produce this privileged information.

Such use of a party's subpoena power to demand the production of privileged information is improper.  The Subpoena should be quashed.

**B. The Subpoena Seeks Information Expressly Denied by the Court Overseeing the Underlying Case.**

AFT Michigan knows that the broad donor information it seeks through the Subpoena is unconstitutional because it has been given the precedent noted above numerous times in the underlying litigation.  Far worse, however, is that it has sought to compel such broad donor information from Project Veritas in the underlying Lawsuit **and has had such attempts denied by the Eastern District of Michigan and was expressly told that such requests are improper and is aware that Project Veritas need not produce such broad donor information**.  *See* Klein Decl., Ex. F.

Having sought this information from a party and being told that it ***may not obtain it*** by the Court in which this action is pending, AFT Michigan now seeks the same broad donor information from a non-party in this jurisdiction.  Such end runs around the orders governing this case are highly inappropriate and an abuse of the subpoena power.  This Court should quash the Subpoena.

Both during written discovery and during depositions, AFT Michigan attempted to learn of the identities of Project Veritas's donors, whether they were relevant to this matter or not.  AFT Michigan sought such information in its written discovery requests.  *See* Klein Decl., Exh. F at 15.  AFT Michigan then filed a

Motion to compel the identity of Project Veritas donors. The court, however, largely refused to do so nearly two years ago. *Id.* at 34. Yet here AFT Michigan now seeks that information it was told it cannot have from a third-party via Rule 45.

The magistrate assigned to rule on AFT Michigan's Motion to Compel ruled that "the identities of PV donors with no known connection to the events at issue in AFT MI's amended complaint **are protected from disclosure under the First Amendment**." Klein Decl., Exh. F at 16 (emphasis added). This was based on the "well-settled law" that "recognizes a right to associate for the purpose of engaging in those activities protected by the First Amendment." *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)).

The magistrate differentiated between three types of donors to Project Veritas: the "supporting donors" who provided financial support for the specific investigation in question in this matter; the "solicited donors," who are those from whom Project Veritas attempted to solicit donations with specific reference to the investigation in question; and "general donors," who are those about whom there is no evidence of financial support or solicitation with specific reference to the investigation of AFT Michigan. Klein Decl., Exh. F at 19-20.

The magistrate permitted very limited and narrow discovery into the "supporting donors" and "solicited donors." There is scant evidence any such donors exist; the only evidence is limited to a few emails that were not sent to or

from Mr. Seddon and with which he has no apparent connection. Nevertheless, AFT Michigan's attempt at gaining broader knowledge of Project Veritas's donors was flatly denied.

The magistrate held that "donors generally have a right to anonymity that is protected by the First Amendment." Klein Decl., Exh. F at 34 (*quoting NAACP*, 357 U.S. at 460). The magistrate held that there is evidence that "disclosure of [Project Veritas's] general donors would arguably chill[] its and its members associational rights." *Id.* Moreover, "AFT Michigan does not show that the identities of general donors . . . are relevant, much less highly relevant." *Id.* Thus, the magistrate "denie[d] AFT MI's request to compel" evidence of Project Veritas's general donors. *Id.*

AFT Michigan—despite that Court order—has now issued a Rule 45 subpoena to a non-party witness in a different jurisdiction almost two years later asking for "[a] copy of **any** correspondence sent or received" for a one-and-one-half year period between the non-party and "**any** donor to Project Veritas . . . ." Klein Decl., Exh. A at 5 (emphasis added). AFT Michigan makes no attempt to stay within the confines of the order already issued against its attempt to gain general donor information. AFT Michigan provides no guiderails in the Subpoena that would ensure that Project Veritas's or its donors' First Amendment associational rights are not infringed. Nor does AFT Michigan seem to particularly care that the court

*presiding over the Lawsuit* has already ruled that such broad requests for general donor information have not been shown to be "relevant, much less highly relevant." Klein Decl., Exh. F at 34.

AFT Michigan is seeking to gain from a non-party that which the court hearing its case has already ruled that it *may not obtain*. Worse, it is not merely the case that AFT Michigan does not have a right to such information; it has already been ruled that both Project Veritas and its donors have First Amendment protections against such information being disclosed. AFT Michigan attempts to use this Court and its power and to use third-party discovery as an end run around the court orders already governing this matter and its prior requests. Such attempts should not be countenanced. Since AFT Michigan did not bother to narrowly tailor its requests, this Court should not be expected to do so and the Subpoena should be quashed in its entirety.

Beyond the fact that the magistrate in the Lawsuit already ruled that such broad discovery requests were improper and that AFT Michigan was not entitled to such documents (and that Project Veritas's First Amendment rights foreclose such requests), AFT Michigan *itself* has agreed not to pursue *any* donor information until further order of the Article III judge overseeing this matter. *See* Klein Decl., **Exhibit H** (Stipulated Order with Respect to Defendants' Motion to Stay). **AFT Michigan voluntarily agreed to a Stipulated Order holding that the Magistrate's narrow**

**order compelling disclosure of any donors names be stayed.** *Id.* Thus, Project

Veritas did not have to disclose *any* donor names "pending a decision of [the Eastern

District of Michigan] on the Defendants' objections to the same order and opinion."

*Id.* Until the judge rules upon Project Veritas's objections to the magistrate's ruling,

no donor names are to be produced.

Despite this, AFT Michigan is now asking a non-party for "[a] copy of **<u>any</u>**

correspondence sent or received" for a one-and-one-half year period between the

non-party and "**<u>any</u>** donor to Project Veritas . . . ." Klein Decl., Exh. A at 5. And

again, this is regardless of any relevance that any such correspondence with any

donor may have, without regard to any concerns with any First Amendment rights

any donor may have, and without concern for any obligations of confidentiality that

the third-party may have, and despite the currently pending objection in the Lawsuit.

To now try to seek the same information—including that which it has

expressly been told it is *not* permitted to obtain—is inappropriate. And to do so via

a non-party subpoena in a different jurisdiction that would not be aware of the prior

rulings in this very case is extraordinarily inappropriate. This Court should exercise

its authority to quash this Subpoena outright and not permit AFT Michigan to use

the auspices of this Court to obtain that which it has already been ordered it may not

receive.

### C. The Subpoena Seeks Information Pertaining to Other Privileged, Protected, and Confidential Information that Has Been Objected to in the Instant Case and Never Sought to be Compelled in the Eastern District of Michigan.

As noted above, "Courts in this Circuit have recognized" that a party has standing to object to a subpoena "if it believes its own interest is jeopardized by discovery sought from a third party . . . ." *CQI, Inc.*, 2010 WL 11530839 at *2. AFT Michigan's overly broad Subpoena calls for the production of more of Project Veritas's privileged and/or confidential information, even beyond its donors. Project Veritas made distinct objections to AFT Michigan's document requests as to its First Amendment privileges, and AFT Michigan made no motions to compel such information before or after discovery closed nearly two years ago. Klein Decl., ¶ 10. AFT Michigan thus conceded Project Veritas's First Amendment privilege in documents that do not relate to its investigation of AFT Michigan as well as the names of journalists or Veritas staff who played no role in the investigation. Despite this concession, AFT Michigan's requests to Mr. Seddon take no care to protect against such concerns. *See* Klein Decl., Exh. A at 5.

Numerous times throughout this matter AFT Michigan—in written discovery or in depositions—has asked questions that either purposely sought the identity of undercover journalists beyond the AFT Michigan investigation or were of such a nature that might elicit such protected information. Project Veritas always objected to requests that would call for the identity or names of its undercover journalists who

played no role in the investigation of AFT Michigan. *See, e.g.*, Klein Decl., Exh. D at 4-5 (Project Veritas's Responses to AFT Michigan's First Set of Discovery Requests, Response to Request No. 2) ("Project Veritas objects to the extent that . . . such documents may contain the names of journalists who played no role in the investigation of AFT Michigan and therefore are irrelevant to any party's claims or defenses and are otherwise privileged under the First Amendment."). Project Veritas also informed AFT Michigan that to the extent Veritas produced documents that contain the names of its journalists who played no role in the investigation of AFT Michigan or contained information or details about other investigations, such names or information would be redacted. *Id.; see also id.* at 7, 22-23 (Response No. 5 and Response No. 28) ("[i]f any such documents contain the names of Project Veritas journalists who played no role in the investigation of AFT Michigan, details of other investigations, or donor information, that information will be redacted as irrelevant to any party's claims or defenses and privileged under the First Amendment."). Similarly, in depositions, any time there was any question that could even potentially elicit information pertaining to a Project Veritas journalist who was not involved in the AFT Michigan matter or might contain information about other investigations, Project Veritas objected and instructed the witness in question not to answer.

AFT Michigan never sought to compel such information about other Project Veritas journalists, other investigations, or other privileged or confidential

information. With discovery closed in the case, this Court should rule that AFT Michigan's effort here is foreclosed: it accepted Project Veritas's assertions of privileges and protections during its case-in-chief, which it may not undo via the Eastern District's permission to reopen discovery for a single deposition. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

The document requests attached to the Subpoena seem engineered to be as overly broad as possible to elicit such privileged and/or confidential information, should Mr. Seddon have any such documents in its possession or control. The requests seek **any** correspondence between the non-party and Project Veritas, **any** employee of Project Veritas, **any** donor to Project Veritas, or even **any** other entities that may or may not be related to Project Veritas and are **not** parties to this suit. Klein Decl., Exh. A at 5 (Request No. 1). Knowing of Mr. Seddon's limited role in the AFT Michigan investigation, the Plaintiff nevertheless seeks "any contract or agreement between Richard Seddon and Project Veritas *made at any time for any reason*." *Id.* (Request No. 2) (emphasis added). These requests and others show that this is not discovery into Veritas's AFT Michigan investigation or its causes of action, but a quintessential example of a fishing expedition.

To the extent such documents contain information of any Project Veritas journalists, other Project Veritas investigations, or other information that Project Veritas objected to producing and that AFT Michigan never sought to compel, such

documents should not be produced. And to the extent such documents requested contain any Project Veritas confidential or proprietary information, they should likewise not be produced. But the requests accompanying the Subpoena were clearly intended to be as broad as possible, leading to the potential (and hoped-for, by AFT Michigan) production of privileged or otherwise protected information from a non-party that AFT Michigan was not permitted to obtain from the parties in the Lawsuit.

A recent federal case on point is instructive here. In *Gilmore v. Jones*, 339 F.R.D. 111 (W.D. Va. 2021), the court held that where a nonparty subpoena *duces tecum* directed at a third party is not narrowly tailored to allegations within the case at hand, broadly seeks information to support purported conspiracies, and in which the parties to the suit are barely even mentioned, such a subpoena is "facially overbroad." *Id.* at 123. Just as in that case, the documents requested by AFT Michigan seek information regardless of whether or not it is related "to the claims at issue in the case." *Id.* at 118. Notably, the Subpoena and related document requests do not even mention AFT Michigan. Nor does it mention the primary Defendant in the instant case, Marisa Jorge, let alone her investigation into AFT Michigan. In *Gilmore*, the federal court held a non-party subpoena to be overly broad where "plaintiff makes only a cameo appearance in these requests." *Id.* at 123. But that cameo was much more than AFT Michigan's wholly non-existent appearance in the requests at issue.

Given the fact that the requests in the *Gilmore* case were not even tied to the facts alleged in the underlying case or the allegations made, that court held that the requests were "not tailored to the claims and defenses at issue in this litigation." *Id.* at 123. The same is true in the case at hand. AFT Michigan's requests are a clear fishing expedition. Instructively, the *Gilmore* court noted that although it had the authority to narrow overly broad or improper requests for documents, it need not do so and it may not even be proper to do so. Instead, the *Gilmore* court quashed the requests in their entirety. *Id.* at 127. The same should be done here.

Project Veritas has a proprietary and protected interest in its documents that name their undercover journalists and information regarding other undisclosed investigations. Project Veritas expressly objected to producing such information in the instant case or, where documents were requested that may contain such information, purposefully redacted any such information. It keeps such information confidential. But AFT Michigan—knowing this—requests broad categories of "any" documents that Mr. Seddon may have ever had in his possession at any time during his relationship with Project Veritas, whether or not it pertains to AFT Michigan or the facts it alleges in this case.

AFT Michigan's fishing expedition into areas it was not entitled to receive from Project Veritas and did not even pursue during discovery should not be

countenanced.  AFT Michigan's Subpoena should be quashed for seeking privileged and protected material.

## IV.     The Court Should Impose Sanctions Upon AFT Michigan

When a non-party subpoena is improperly served and a motion to quash is granted, sanctions against the serving party are proper.  Under Rule 45, "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required **must** enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorneys' fees—on a party or attorney who fails to comply."  *See BNSF Railway Co.*, 2022 WL 1442854 at *5.  "This provision imposes obligations on both attorneys and courts; attorneys must obey their duty under the rule, and courts must enforce it."  *Id.*  Under Ninth Circuit authority, a court may "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law."  *Id.*, quoting *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

This Court very recently, in *BNSF Railway*, sanctioned the party who issued an improper subpoena by awarding the party who moved to quash the subpoena its attorneys' fees, in addition to quashing the subpoena.  Here, the Subpoena is not only overly broad and unduly burdensome on the party to whom it was issued, it is also

in direct contravention of court orders and even stipulated agreements in the Lawsuit. AFT Michigan—nearly two years after discovery ended—is now attempting to seek materials, documents, and information that it was expressly told it may not obtain or that it declined to pursue following timely objection by Project Veritas. To now try to gain such information from a third party, with no reference to the restrictions already governing this case, and without regard to the current orders governing this matter, is inappropriate and its issuance was in bad faith, made for an improper purpose, and is inconsistent with prior orders issued by the presiding judge in the Lawsuit. As such, Project Veritas respectfully requests that it be awarded its attorneys' fees incurred having to raise matters in this Court that have already been raised and largely resolved in the court overseeing the Lawsuit.

## V.      Conclusion

As outlined herein, Project Veritas respectfully requests that the Court quash the Subpoena in its entirety since it is overly broad, seeks documents protected by the First Amendment, and seeks to compel production of documents which the presiding court has already ruled are not discoverable. Furthermore, because Michigan AFT issued the Subpoena in bad faith, for improper purposes, and in contravention of prior court orders, Project Veritas respectfully requests that the Court award Project Veritas its costs and attorneys' fees incurred in having to file the instant Motion.

Dated this 9th of June, 2022.

CROWLEY FLECK PLLP
900 North Last Chance Gulch
Suite 200
Helena, MT  59601
Telephone: 406.449.4165
Facsimile: 406.449.5149


By  */s/ Brad J. Brown*
Brad J. Brown
Email: bbrown@crowleyfleck.com


## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2) of the U.S. District Court Rules, I certify that this brief is printed with a text typeface of 14 points; that it is double spaced; and that the word count excluding the caption, this certificate of compliance, the table of contents and authorities, exhibit index, and the certificate of service—is less than 6500 words as calculated by Microsoft Word.

DATED this 9th day of June, 2022.


By  */s/ Brad J. Brown*
Brad J. Brown

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of June, 2022, a true and correct copy of the foregoing document was mailed, postage prepaid, and by electronic mail to the following:

[X]   U.S. Mail              Mark H. Cousens
[ ]   FedEx                   2621 Evergreen Road, Suite 130
[ ]   Hand-Delivery      Southfield, MI 48076
[ ]   Facsimile             cousens@cousenslaw.com
[X]   Email


[X]   U.S. Mail              Joseph E. Sandler
[ ]   FedEx                   Sandler Reiff Lamb Rosenstein &
[ ]   Hand-Delivery      Birkenstock PC
[ ]   Facsimile             1090 Vermont Ave., N.W.  Suite 750
[X]   Email                   Washington DC 20005
                                   sandler@sandlerreiff.com


*/s/ Brad J. Brown*
CROWLEY FLECK PLLP