IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

IN RE SUBPOENA OF
RICHARD SEDDON.

MC 22-08-BLG-SPW-TJC

Bradford James Brown
CROWLEY FLECK PLLP - HELENA
Attorneys for Defendant - In Re
Subpoena of Richard Seddon
900 N. Last Chance Gulch, Suite 200
Helena, Montana  59601
406-449-4165
Fax: 406-449-5140
bbrown@crowleyflect.com

Mark H. Cousens
Attorney for Respondent - AFT Michigan
26261 Evergreen Road, Suite 130
Southfield, Michigan  48076
248-355-2150
Fax: 248-355-2170
cousens@cousenslaw.com

Nathan S. McConnell
MCCONNELL LAW OFFICE
Attorney for Respondent - AFT
Michigan
114 West Pine Street
Missoula, Montana  59802
406-721-1262
Fax: 406-543-2557
nate@mcconnell-law.com

**RESPONDENT AFT MICHIGAN'S RESPONSE TO
DEFENDANT'S MOTION TO QUASH SUBPOENA**

## Table of Contents

Statement of Controlling Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of Questions Involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Decision of the Magistrate Judge Re Solicited and Supporting Donors . . . . . 4

    C.    The Decision of the Magistrate Judge Regarding General Donors. . . . . . . . . . . . 7

    D.    The Pending Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The Seddon Subpoena. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    Seddon's Role at Project Veritas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    The Document Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    The Court Should Transfer the Motion to the Eastern District of Michigan . . . . 11

    B.    The Objections Are Not Ripe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.    The Objections Are Not Specific . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    There Is No Blanket Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    E.    Project Veritas Intentional Misstatements to this Court . . . . . . . . . . . . . . . . . . 21

        1.    Falsehoods about Plaintiff's Request for Certain Donor Information . . . 21

        2.    Misstatements about the Decision of the Magistrate Judge . . . . . . . . . . 23

i

            3.      Speculation about "Privilege"....................................23

      F.    The Request for Sanctions .........................................24

Conclusion ..................................................................24

ii

## Statement of Controlling Authority

F.R.C.P. 45(f)

*AFT Michigan v. Project Veritas*, 2022 WL 779784 (E.D.Mich., 2022)

*DIRECTV, Inc. v. Richards*, 2005 WL 1514187 (D.N.J., 2005)

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30 (D.D.C., 2014)

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir., 2010)

**Statement of Questions Involved**

1.    Shall this Court transfer the Defendants' motion to quash a subpoena to the United States District Court for the Eastern District of Michigan for decision?

        Plaintiff AFT Michigan says "Yes".

        The position of the Defendants is unknown.

2,    Has the Defendant presented the Court with objections to the requested documents that are ripe for decision or is the objection premature?

        Plaintiff AFT Michigan says "No".

        Defendant is likely to say "Yes".

3,    Has the Defendant presented the Court with objections to the requested documents that are sufficiently specific?

        Plaintiff AFT Michigan says "No".

        Defendant is likely to say "Yes".

4.    Is any of the material requested precluded from disclosure pursuant to the decision of United States Magistrate Judge Stafford?

        Plaintiff AFT Michigan says "No".

        Defendant is likely to say "Yes".

**Table of Authorities**

**Decsions by the United States Supreme Court**

*Roberts v. U.S. Jaycees*, 468 US 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Decisions by the Federal Court of Claims**

*Kansas City Power & Light Co. v. United States,*
132 Fed.Cl. 28 (Fed.Cl., 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Decisions by the United States District Courts**

*DIRECTV, Inc. v. Richards*, 2005 WL 1514187 (D.N.J.,2005) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Subpoena Served on Affiliated Foods, Inc.,*
2021 WL 4439796 (N.D.Tex., 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ohio A. Philip Randolph Institute v. Obhof,*
2020 WL 571307 (6th Cir., 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ohio A. Philip Randolph Institute, et al. v.*
*Householder, et al.*, 2019 WL 3288170 (S.D. Ohio, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir., 2010) . . . . . . . . . . . . . . . . . . . . . 16, 17, 19, 20

*Smith v. Kansas Public Employees Retirement System,*
2019 WL 1171512 (D.Kan., 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tree of Life Christian Schools v. City of Upper Arlington,*
2012 WL 831918 (S.D.Ohio, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Federal Rules Decisions**

*Hoog v. PetroQuest, LLC*, 338 F.R.D. 515 (S.D.Fla., 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Judicial Watch, Inc. v. Valle Del Sol, Inc.,*
307 F.R.D. 30 (D.D.C., 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

v

**Federal Rules of Civil Procedure**

F.R.C.P. 45(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

**Introduction**

<u>A.</u>

The Court should deny the motion to quash a validly issued request for documents as the objections raised are not ripe for consideration and Defendants' objections are over-the-top complaints without substance. Project Veritas has grossly misstated the decision of a Magistrate Judge; has invited this Court to consider the merits of an aspect of this case that is pending before Judge L. Parker of the United States District Court for the Eastern District of Michigan; has presented objections devoid of specifics.

The Court should exercise the authority granted it by F.R.C.P. 45(f) and transfer this motion to Judge Parker for decision. The motion here creates the potential for conflicting rulings and disruption of the consideration of the dispute by Judge Parker. That eventuality can be avoided by a transfer of this dispute to the Court in which the principal case is pending.

<u>B.</u>

Despite its claim to be an organization of journalists, Project Veritas is a political entity dedicated to attacking groups whose ideology and conduct it opposes. PV has spent more than a decade engaging in the most nefarious of techniques to infiltrate, spy on and unlawfully remove documents from organizations it has infiltrated. This motion is but an extension of the organization's efforts to hide in the dark from anyone seeking to expose it. The entity which claims as a mission the duty to expose others itself evades exposure at all costs. This motion is without merit. It should be either transferred to the Eastern District of Michigan or denied outright.

1

**The Facts**

A.      The Case

1.

   This action relates to the conduct of Marissa Jorge, an operative employed by Project Veritas. In 2017 Jorge was sent by Project Veritas to Michigan to seek an unpaid internship with AFT Michigan. AFT Michigan is the Michigan affiliate of the American Federation of Teachers, AFL-CIO. Its Michigan affiliates represent some 35,000 employees of public schools, colleges and universities throughout the State of Michigan.

   During an interview with AFT MI, Defendant Jorge presented herself as a student at the University of Michigan whose name was "Marisa Perez." She claimed to be interested in becoming a second-grade teacher, that her parents were teachers and that she was interested in labor organizations that represented teachers. She said that she wanted to serve as a volunteer intern for AFT Michigan during the Summer of 2017.

   Every one of these representations was a knowing and deliberate lie. Jorge was none of the things she said: she was not a student, had no interest in becoming a teacher and wanted to harm, not help, labor organizations representing educators. To the contrary, she was a spy employed by Defendant Project Veritas who was assigned to infiltrate the Federation, covertly record private conversations and steal confidential documents.

2.

   Relying on her falsehoods, AFT Michigan engaged Jorge as an intern for the Summer of 2017. She was entrusted with access to certain information and given various assignments. While

2

so engaged and without permission she rummaged through file cabinets maintained in private offices and without authorization photographed a myriad of confidential documents, covertly recorded conversations with AFT Michigan staff, and accessed electronic files maintained on personal computers assigned to AFT Michigan staff. Further, in direct contravention of Michigan law, Jorge covertly recorded conversations to which she was not a party but merely an eavesdropper. The recordings and copies were routinely sent to Project Veritas.

In her deposition Jorge acknowledged, as did Project Veritas CEO James O'Keefe, that, while engaged at AFT Michigan Jorge was always functioning as an employee of Project Veritas and pursuing its goals and not those of AFT Michigan.

3.

Jorge was discovered as a fraud in September, 2017. Shortly afterward, AFT Michigan filed suit in Wayne County, Michigan, Circuit Court which Project Veritas promptly removed to the United States District Court for the Eastern District of Michigan where the case was assigned to the Hon. Linda Parker as case number 17-13292.

Plaintiff AFT Michigan asserted that Jorge had engaged in a series of torts including fraud, breach of duty of loyalty, trespass and wiretapping in violation of the laws of the United States. A motion to dismiss by Project Veritas was denied with regard to these claims. Indeed, in Judge Parker's June 2019 opinion addressing defendants' motion to dismiss, she noted that defendants had done "little to refute the alleged conduct against them." [ECF No. 104, PageID.2528].

Plaintiff's action remains pending before Judge Parker. She has under advisement three motions relating to the litigation. Among these are objections filed by Project Veritas to a recommendation from the Magistrate Judge regarding disclosure of the name of certain donors.

B.     The Decision of the Magistrate Judge Re Solicited and Supporting Donors

AFT Michigan believes that the infiltration of AFT Michigan was not an accident; that it was funded by a specific person or group of people who conspired with Project Veritas to cause harm to the Federation of Teachers. As part of discovery, Plaintiff sought the identity of persons who financed or supported the infiltration of AFT Michigan. Two sets of emails were the basis of Plaintiff's request for the identify of specific donors. Ex. 1, 2.

1.

(a)    The first email was sent September 6, 2017 as part of a solicitation for contributions. Project Veritas CEO O'Keefe sent the correspondence to unnamed donors bragging about its unlawful infiltration of AFT Michigan. Ex 1 stated, in pertinent part:

> I just came out of a meeting with my undercover journalist after she spent months inside AFT in MI.
>
> "This story is really explosive and I think we're going to get a lot more over the coming months. It's explicit and powerful. We even have documents to back everything up
>
> "I really need to give you an update on the phone, let me know when we can talk. Sooner the better. ***-***-****

(b)

The second email was sent following Project Veritas' receipt of the Plaintiff's complaint. The infiltration of the Federation was discovered in late September, 2017 and this action was initiated in state court on September 28, 2017. Within two days of being served with the Plaintiff's complaint, Defendant Project Veritas began contacting donors regarding the suit. On September 29, 2017, likely the day following service of the complaint on Project Veritas, James O'Keefe and Austin Wright, a Project Veritas fund raiser, exchanged the following email Ex. 2.

4

At 6:13 p.m. Mr. Wright wrote to Mr. O'Keefe regarding this suit:

Hmm.. really hope this doesn't hurt us with the needed funding. I've called (redacted) twice and (redacted) and JO should ping (redacted)"

12 minutes later Mr. O'Keefe responded:

I think we can use it to our advantage since Randi Also... the only current actual donor who has actually given money on this (redacted), actually looks to our leadership on the matter.

He has already renewed for next year.

Is (sic) we get the rapist on video confirming that he did what the rest of the investigation shows. And then, it's a cover - up by Randi.

This is now a national story.

But yes, you should continue to ping (redacted) and (redacted) and I will ping (redacted)."

And at 6:50 p.m. Mr. O'Keefe wrote to Mr. Wright

R (sic) talking to (redacted) "We think it'll be fine. Just more evidence that we are trying to bleed us dry. We will turn lemons into lemonade. Continue to harass (redacted) (sic)

("Randi" refers to Rhonda Weingarten, President of the American Federation of Teachers).

2.

Plaintiff sought the identity of persons named in the emails and persons to whom the emails were sent. Project Veritas refused to provide this information and Plaintiff filed a motion to compel discovery. The motion was granted with regard to donors identified in the two emails. Ex 3. The Magistrate Judge concluded that donors to Project Veritas fell into three categories. "General Donors," "Solicited Donors" and "Supporting Donors."

The Magistrate Judge directed Project Veritas to disclose the identity of *solicited* donors and *supporting* donors. These were persons who may have directly supported and paid for the infiltration

of AFT Michigan. The Magistrate Judge rejected Project Veritas' arguments with regard to the identity of those donors who "...financially supported defendants' infiltration of AFT MI..." because they are relevant to Plaintiff's claims and not protected by the First Amendment. She noted that the right of association is "not absolute."

> "[i]nfringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."

Slip op., 18

The Magistrate Judge rejected the contention that the identity of persons who directly supported the infiltration of AFT Michigan could be sequestered. She stated that "Defendants provided no affidavit nor other evidence to show the burden or expense of disclosing the supporters from whom they solicited donations for the infiltration into AFT MI, and the Court cannot infer that burden or expense from common sense." *Id.*, at 32.

The recipients of these emails are likely the persons who directly supported the AFT Michigan infiltration. Project Veritas sought to raise money to support its unlawful actions but Project Veritas has refused to permit Plaintiff to learn who might have initiated, supported, encouraged, or profited from Defendants' infiltration of AFT Michigan. The names of the recipients of the soliciting email were not protected because the "The Court... finds that the solicited donors with whom PV shared its "explosive" findings, strategy and goals are witnesses and potential co-conspirators. Defendants' strategy and goals in infiltrating AFT MI are central to the issues in this case." *Id.*, at 31. The identity of these persons was not protected and Project Veritas was required to disclose the names of these persons.

6

C.    The Decision of the Magistrate Judge Regarding General Donors

1.

The Federation believed that general donors to Project Veritas may have supported or directed the AFT Michigan infiltration. Therefore, as part of discovery, the Federation submitted a request for an unredacted copy of its forms 990 for three calendar years as filed with the Internal Revenue Service. These forms include the names of persons who donated to Project Veritas during the calendar year. PV objected to the disclosure and Plaintiff moved to compel discovery. Plaintiff's motion to compel discovery related to a very specific document–the forms 990 for three calendar years. AFT Michigan did not seek the names of all donors to Project Veritas. The decision of the Magistrate Judge was narrow and brief with regard to General Donors. She held that "...AFT MI does not show that the identities of general donors—those who neither provided financial support specifically for the infiltration of AFT MI nor were solicited by O'Keefe or other PV fundraisers to support that infiltration—are relevant, much less highly relevant." The request for forms 990 was, therefore, denied. Slip op., 34.

2.

Project Veritas' brief seems to suggest that the Magistrate Judge ruled that AFT Michigan "...is seeking to gain from a non-party that which the court hearing its case has already ruled that it may not obtain." Brief at 15. This statement is demonstrably false and an attempt to mislead the Court, The decision of the Magistrate Judge was limited to the Plaintiff's request for forms 990. Plaintiff has not sought the identities of "all" Project Veritas donors and has not been prevented from doing so if the information sought is relevant.

7

D.    The Pending Objections

Project Veritas filed objections to the recommendation of the Magistrate Judge. Those objections are pending before Judge Parker. The matter has been fully briefed (including the presentation of supplemental briefing) and is awaiting decision. The question here and the question pending before Judge Parker raise identical questions of law.

The brief submitted by Project Veritas to Judge Parker is attached as an exhibit. Even a cursory glance shows that Project Veritas has made the same arguments to Judge Parker as it makes to this Court. The issues which Judge Parker will consider do not just overlap with the Defendants' motion to quash; they are identical.

**The Seddon Subpoena**

A.    Seddon's Role at Project Veritas

Richard Seddon was engaged with the Defendant during 2016 and 2017 as a consultant. The exact nature of his employment is to be discovered. Project Veritas CEO James O'Keefe has denied that Seddon was employed by Project Veritas but rather said he was an independent contractor. However, Seddon was identified by Defendant Marissa Jorge as her supervisor while she was working at Project Veritas.

AFT Michigan faced considerable difficulty in locating Mr. Seddon. Multiple efforts were made to serve him with a subpoena over a three year period. He was finally located in the Summer of 2021. Although discovery had closed (subject to Court review of several discovery motions) AFT Michigan sought permission to depose Mr. Seddon. Judge Parker granted that request on March 14, 2022. Plaintiff and counsel for Mr. Seddon finally agreed on a deposition date and location. The

deposition is scheduled for August 18, 2022 at the Northern Hotel in Billings, Mt. The location and time were mutually agreed with counsel for Mr. Seddon.

B.     The Document Request

1.

As a routine part of the deposition, Plaintiff issued a subpoena duces tecum requesting that Mr. Seddon produce certain documents if they existed. The subpoena and document request are attached. Ex. 5. The information sought relates only to Seddon's tenure with Project Veritas.

2.

Project Veritas finally identifies the part of the document request to which it objects at page 11 of its brief. There it appears that Project Veritas objects only to the last clause of request one of the six requests issued by the Federation of Teachers. Request one states, in whole:

> "A copy of any correspondence sent or received between June 1, 2016 to October 1, 2017, whether physical or electronic between Richard Seddon and Project Veritas, any officer of Project Veritas, any employee of Project Veritas, any donor to Project Veritas or any volunteer providing services to Project Veritas."

The information requested relates to how the witness was engaged by Project Veritas, the terms of his engagement, the scope of his responsibilities and his conduct while so engaged. The request is limited in time, covering only the period of Mr. Seddon's engagement at Project Veritas and is limited to correspondence, written or electronic. Simply put, Plaintiff is entitled to know just what Mr. Seddon was doing while engaged at Project Veritas and how he got there. The material requested does not ask for information about any donations, the amount of donations or when they were made.

The infiltration of AFT Michigan was not undertaken in isolation. The Federation was chosen for a reason. Plaintiff has sought to identify why it was targeted as opposed to other labor

9

organizations in Michigan. The information requested–correspondence–may reveal why AFT Michigan was targeted. The documents may reveal with whom Project Veritas conspired to identify and target the Federation of Teachers. The Magistrate Judge noted the relevance of such information in her decision:

> "In addition, for AFT MI's civil conspiracy claim, the donors with whom defendants communicated about the infiltration into AFT MI are highly relevant "witnesses at a minimum, and may also be potential co- conspirators."

Slip op., 24.

The document request is directly relevant to the possibility that Project Veritas conspired with persons to target AFT Michigan and may help identify the persons with whom Project Veritas conspired.

## Argument

A.    The Court Should Transfer the Motion to the Eastern District of Michigan

1.

F.R.C.P. 45(f) permits the transfer of a motion to quash a subpoena "if the court finds exceptional circumstances." This motion meets that standard.

In *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 517–18 (S.D.Fla., 2021) the Court analyzed the application of the transfer rule. The Court noted that

> "Although Rule 45(f) does not define "exceptional circumstances", the Advisory Committee Notes to the 2013 amendments provide two examples of situations in which transfer due to exceptional circumstances is appropriate: (1) when the issuing court has already ruled on issues presented by the motion, and (2) when the same discovery issues are likely to arise in many districts."

The Court cited *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C., 2014):

> "Specifically, the authority to transfer subpoena-related motions under Rule 45(f) broadly applies to all motions under this rule, including motions for a privilege determination.") (quotation marks omitted). Courts "should look to a variety of factors to determine if the judge from the issuing court is in a better position to rule on the motion due to her familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation."

Transfer of a motion is appropriate to "...avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *In re Subpoena Served on Affiliated Foods, Inc.*, 2021 WL 4439796, at *2–3 (N.D.Tex., 2021)

2.

The issues presented by this motion are substantially the same as those pending before the District Court for the Eastern District of Michigan. There Judge Parker is asked to consider virtually identical arguments presented by Project Veritas. Indeed, Project Veritas cites this Court to the pending case.

The "extraordinary circumstances" presented here include the existence of very similar issues pending before Judge Parker, the possibility that rulings might inadvertently be conflicting and the potential for inadvertent disruption of Judge Parker's consideration of the issues pending before her. The Court is therefore respectfully asked to decline to decide this matter and transfer the dispute to the Eastern District of Michigan.

11

B.    The Objections Are Not Ripe

1.

     As is common in discovery, Plaintiff is seeking the production of documents *if they exist*. Plaintiff cannot state to the Court that it knows that documents exist or what they say. Project Veritas has not stated to this Court that it knows of the existence of responsive documents. It has not stated what the documents might say. Instead, its objection is purely speculative.

     Of the six requests, only one touches on donors. But there may not be any such documents. Plaintiff will not know whether Mr. Seddon has material which responds to the request until the date of the deposition. In short, this motion may end up being "much ado about nothing."

2.

     The motion to quash seeks to avoid the disclosure of documents which may not exist and is therefore not ripe for consideration. Plaintiff has issued a subpoena duces tecum requesting the witness to bring to the deposition a variety of documents. The documents have not been presented to date as the production date is the date of the deposition. Unless Project Veritas has been communicating with Mr. Seddon, as of the date of filing its motion, Project Veritas could not know whether the witness will produce documents to which Project Veritas might object. Mr. Seddon may not have any documents which fall into the Defendants' objection. Hence, as of this date, Project Veritas cannot cite to a specific document that it believes is somehow privileged. Instead it has presented a general objection without specifics. Neither Plaintiff nor this Court can consider the merits of the Defendants' objection because it is pure speculation. Simply put, no one knows whether Mr. Seddon has any documents which are responsive to the Plaintiff's subpoena.

3.

It is axiomatic that the Court will not consider a moot dispute or one that is not ripe for review. With regard to a subpoena a party must present more than "vague legal conclusions" and speculation about personal privilege. See *DIRECTV, Inc. v. Richards*, 2005 WL 1514187, at *4 (D.N.J., 2005). See also *Smith v. Kansas Public Employees Retirement System*, 2019 WL 1171512, at *5 (D.Kan., 2019). (Plaintiff again speculates without support that a "huge amount of material" irrelevant to the case will be produced because of the subpoena. Without that showing, plaintiff's assertions are mere insufficient speculation.). And *Kansas City Power & Light Co. v. United States*, 132 Fed.Cl. 28, 44 (Fed.Cl., 2017) a motion to quash was denied as premature because, as here, the moving party could not identify the documents to which it objected:

Project Veritas has presented the Court with nothing on which to make a decision. Instead, it argues that the document request seeks "privileged" material without identifying what documents might be privileged or the basis for the claim of privilege. It contends that Plaintiff may not view correspondence simply because it may have come from a donor to Project Veritas. Yet at this moment no one knows whether there is such correspondence, whether Mr. Seddon has any document to disclose or whether the correspondence will actually reveal the name of a donor.

The Court is asked to rule in a vacuum without knowing whether there actually are documents to dispute. As such this motion is not ripe for consideration and should be denied.

C.    The Objections Are Not Specific

The motion to quash fails to present specific objections to the document request. Project Veritas states that "The Subpoena is facially overbroad, expressly seeks privileged information, and

is in direct contravention of prior orders of the Eastern District of Michigan." Brief at 1. As noted above, it appears that Project Veritas is objecting to a portion of request one.

The objections are without merit. First, the request is tailored. It asks for documents sent or received during a very specific time. It asks for information which the witness sent or the witness received. The time period is limited to the duration of Mr. Seddon's work with Project Veritas.

The material requested relates to communication that involves Project Veritas and Mr. Seddon. It is hardly a "fishing expedition" (although that is what discovery is for) because it seeks material which will explain what Mr. Seddon did while engaged with Project Veritas and his role in the AFT Michigan infiltration.

Second, the request does not seek the identity of donors, generally. No list is requested. Rather the documents requested include those which may have come from someone who was a donor to Project Veritas.

Third, despite its braggadocio, AFT Michigan has not been told it may not secure information regarding certain donors. The opinion of Magistrate Judge Stafford makes clear that Plaintiff is entitled to information about persons who either financed the infiltration of AFT Michigan or who were solicited by Project Veritas based on the infiltration of AFT Michigan. Plaintiff was denied a list of donors attached to Project Veritas' IRS form 990 but was not told it could not request and receive donor information if it revealed persons who supported or financed the infiltration of AFT Michigan or if they were solicited based on the infiltration of AFT Michigan. Project Veritas grossly and intentionally misstates the decision of Magistrate Judge Stafford and attempts to paint that ruling with a vastly oversized brush.

14

Plaintiff does not know whether there are any documents which are responsive to its request. Perhaps Project Veritas knows. If it does or if it has had contact with Mr. Seddon about such documents it has failed to notify the Court. Instead, it argues about material which may not exist raising objections falsely premised.

AFT Michigan is entitled to seek and obtain information about the persons who may have financed or supported the infiltration and disparagement of the Federation. The requested documents may reveal such information or there may be none. If the documents exist, AFT Michigan is entitled to them. If the documents do not exist then considerable time of counsel and the Court has been used unnecessarily.

D.    There Is No Blanket Privilege

1.

Contrary to Defendants' repeated assertions, there is no blanket prohibition to disclosure of associational activity. While there is some protection against certain kinds of disclosure which would infringe on associational rights, this protection is subject to a balance. As the Supreme Court explained in *Roberts v. U.S. Jaycees*, 468 US 609 (1984): "[t]he right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." 468 U.S. 609, 623.

Defendant's arguments regarding the scope of disclosure were rejected by the Magistrate Judge. Magistrate Judge Stafford noted that "It is the party asserting the burden who must make "a prima facie showing of arguable first amendment infringement." [Citing *Perry v. Schwarzenegger*,

591 F.3d 1147, 1159 (9th Cir., 2010)] That means that AFT MI does not bear the initial burden of providing the merits of its claims." Slip op., 26.

Further, unlike Project Veritas' response to Plaintiff's motion to compel discovery filed in the District Court, Project Veritas offers no affidavits or other support for its argument that disclosure of the documents requested–if there are any–would harm the associational rights of persons donating to Project Veritas.

The information that Plaintiff seeks is limited and is relevant to the Plaintiff's claim. As noted, Mr. Seddon did not simply show up on Project Veritas' doorstep one day and ask to come in. There is a reason that he was engaged. Once he was brought to work he supervised Defendant Marissa Jorge. Plaintiff is entitled to know why he was selected, how he was engaged and why he was assigned to work on the AFT Michigan infiltration. Correspondence to and from Mr. Seddon may reveal information which will answer these questions.

2.

The balance of interests in disclosure was examined by the 9th Circuit Court of Appeals in *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir., 2010). There, litigants challenged the validity of an amendment to the California Constitution limiting marriage to a man and a woman. They sought to obtain certain internal campaign communications and documents relating to campaign strategy and advertising prepared and produced by the organization which had advocated for adoption of the amendment. The organization refused to provide the information and claimed that doing so would burden the First Amendment associational rights of the organization and its supporters.

The Court acknowledged that there was some protection afforded against disclosure but explained that the discussion did not end there. The Court noted that a balance must be struck between the asserted privilege and the need for the material that is sought The Court explained that a claim of First Amendment privilege was subject to a two-part framework in which the party asserting the privilege must demonstrate ... a 'prima facie showing of arguable first amendment infringement.'" *Perry*, at 1163.

> "This prima facie showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* at 350.
> If the party can make the necessary showing, the evidentiary burden shifts ... [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest ... [and] the 'least restrictive means' of obtaining the desired information."

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir., 2010)

*Perry* recognizes that a balancing is appropriate in which the need for disclosure is weighed against the impact on the right of association. But the case rejects the notion that there is a complete bar to inquiry about donors.

3.

The reasoning of *Perry* together with its balancing test have been considered, with approval, by courts in the 6th Circuit, the circuit where this action is pending. See *Ohio A. Philip Randolph Institute, et Al. v. Householder, et al.*, 2019 WL 3288170 (S.D. Ohio, 2019) (Vacated as moot, *Ohio A. Philip Randolph Institute v. Obhof*, 2020 WL 571307 (6th Cir., 2020) (applying *Perry* balancing). In *Tree of Life Christian Schools v. City of Upper Arlington*, 2012 WL 831918 (S.D.Ohio, 2012) the Court noted that where a discovery request could infringe on a party's associational rights that a First

17

Amendment privilege is not absolute and that "courts typically balance the interest in disclosure and the burden imposed on the association." *Tree of Life Christian Schools v. City of Upper Arlington*, 2012 WL 831918, at *2 (S.D.Ohio, 2012). As such, the *Perry* standard is likely to be adopted by Judge Parker in her consideration of Project Veritas' objections to the decision of the Magistrate Judge.

4.

      Project Veritas did not persuade Magistrate Judge Stafford that it was entitled to sequester the identity of its donors. Applying the *Perry* factors she concluded, first, that this litigation "...requires a critical and timely examination of the line between legal investigative journalism and unlawful espionage. This examination is especially important because it involves alleged illegal espionage targeting "one of the largest teachers' unions in the nation,"  and thus is of significant public concern." Slip op., 30 In this Magistrate Judge Stafford was clearly correct. Project Veritas sought to disparage not just AFT Michigan but the American Federation of Teachers as well. It published a highly edited version of a covertly recorded conversation between Defendant Jorge and an AFT Michigan staff person in which a routine employment matter was discussed. Project Veritas produced a video (published on YouTube) in which it identified the employee involved and presented him as a potential child molester, an allegation even Project Veritas had to qualify as "alleged."

      Magistrate Judge Stafford next found that disclosure of the solicited donors and supporting donors were solicited donors "...with whom PV shared its "explosive" findings, strategy and goals are witnesses and potential co-conspirators. Defendants' strategy and goals in infiltrating AFT MI are central to the issues in this case." Slip op., 31. Here, too, the correspondence sent to and from

Mr. Seddon may reveal both witnesses and co-conspirators; persons who were responsible for the infiltration of AFT Michigan.

Finally, the Magistrate Judge considered "the substantiality of the interests at stake."

"For this factor, the Court must consider how the requested disclosures could adversely impact PV's ability to pursue its mission or chill its solicited donors' rights to associate through PV. Nat'l Abortion Fed'n v. Ctr. for Med. Progress, No. 15-CV-03522-WHO, 2015 WL 13333328, at *3 (N.D. Cal. Nov. 20, 2015). For this factor, defendants' lack of affidavits from the solicited donors is relevant."

Slip op., 32

Here, too, we are to take the word of Project Veritas, the Defendant in this litigation and the entity which employed a spy to infiltrate AFT Michigan, that disclosure may have an adverse impact on donations. Yet nothing in its brief or Mr. Klein's declaration mentions the impact of disclosure. Rather, Project Veritas seems to assert that there is a broad, blanket, privilege. There is not.

5.

Should this Court elect to decide this matter on its merits, it should apply the *Perry* factors. First, Project Veritas has presented no evidence to support its motion. There is no evidence at all that disclosure of correspondence which may have come from a donor will have an adverse impact on the expressive rights of that person or those persons. Unlike the case pending before Judge Parker, Project Veritas has presented no affidavits or other evidence which would suggest that persons who wish to donate to Project Veritas will be chilled in their decision by the disclosure of correspondence written five years ago.

Second, the correspondence, if any exists, may have come from persons who directly financed or supported the infiltration of AFT Michigan. The decision of the Magistrate Judge directs that the identity of such persons be disclosed. Project Veritas cannot therefore argue to this Court that there

19

is some outright prohibition on disclosure of the persons who financed the spying operation at AFT Michigan.

Third, there is no alternative to the disclosure of the correspondence. If correspondence exists, it is the evidence which may help answer a question central to this dispute, i.e. why AFT Michigan was targeted and who supported or financed the operation.

Finally, this case is of significance and the Court should adopt the view of the Magistrate Judge that the litigation is of substantial importance. This request for documents–if they exist–is part of an ongoing litigation in which an entity employing highly questionable tactics will be required to answer for its torts.

Should the Court elect to consider the issue on its merits, the Court should conclude that disclosure of correspondence to and from Mr. Seddon is both appropriate and necessary. That correspondence may have involved a donor to Project Veritas does not shield it from disclosure.

E.      Project Veritas Intentional Misstatements to this Court

In some 25 pages Project Veritas makes nearly a dozen complete misstatements with regard to the proceedings pending in the Eastern District of Michigan and the decision of the Magistrate Judge. These statements are so false as to be knowingly malicious.

1.      Falsehoods about Plaintiff's Request for Certain Donor Information

Project Veritas grossly misstates the issue which was presented to the Magistrate Judge. The actual motion filed by Plaintiff in the District Court is attached. The Court considered a motion to compel discovery regarding Project Veritas' forms 990 filed by Project Veritas with the Internal Revenue Service for tax years 2015, 2016 and 2017. The document request was specific to these

materials. Plaintiff did not seek the name of every person who donated to Project Veritas. The Magistrate Judge denied Plaintiff's motion to compel discovery of the forms 990.

Judge Stafford's decision did not hold that Plaintiff was not entitled to any donor information or admonish Plaintiff that it could not seek disclosure of relevant information.

Despite the Magistrate Judge's narrow ruling, Project Veritas claims that "AFT Michigan previously sought similar information from Project Veritas, only to have such attempts objected to or even denied by the court hearing the Lawsuit" and "The Subpoena Seeks Information Expressly Denied by the Court Overseeing the Underlying Case" and yet here "AFT Michigan now seeks that information it was told it cannot have from a third-party via Rule 45." Vigorous advocacy is one thing. Outright misstatements is something else.

The Magistrate Judge decision is based on the specific documents that were requested–forms 990. Plaintiff did not seek general donor information then nor does it seek it now. The Court considered a single issue. And the decision of the Magistrate Judge does not apply to the narrow request made here.

Project Veritas downplays the scope of the decision of the Magistrate Judge. Judge Stafford directed Project Veritas to identify specific donors; those who were notified of the infiltration of AFT Michigan and were solicited by Project Veritas to support the infiltration; those who provided direct financial support for the infiltration. Project Veritas pretends that it has no obligation to disclose certain donors and attempts to mislead the Court regarding the decision of the Magistrate Judge.

Among a general request for documents, Plaintiff has asked the witness to provide copies of any correspondence he received while employed at Project Veritas which may have come from a

donor. Plaintiff has not asked for names of donors, alone. It is the correspondence that is relevant. This request is directly relevant to the issue of who financed the infiltration of AFT Michigan. It is relevant to the possibility of a conspiracy between Project Veritas and those who financially support it.

2.      Misstatements about the Decision of the Magistrate Judge

Project Veritas attempts to distort the decision of the Magistrate Judge. It asserts that:

- AFT Michigan previously sought similar information from Project Veritas;

- Moreover, the party that issued the subpoena-AFT Michigan-knows full well that the materials sought are privileged. Indeed, it sought the same broad donor information in the underlying case and its attempt was denied by the Eastern District of Michigan;

- The Subpoena Seeks Information Expressly Denied by the Court Overseeing the Underlying Case;

- Yet here AFT Michigan now seeks that information it was told it cannot have from a third-party via Rule 45;

- AFT Michigan itself has agreed not to pursue any donor information until further order of the Article III judge overseeing this matter.

These statements are simply false. Contrary to Project Veritas' assertion *Plaintiff won its case* before the Magistrate Judge with regard to the identity of donors who financially supported the infiltration of the Federation of Teachers. The material the Federation could not obtain was considered too general to be relevant. Project Veritas distorts the decision trying to pretend that it prevailed in full. It did not. To the contrary, the Magistrate Judge made clear that Project Veritas could not prevent disclosure of those who may have conspired with it to defraud AFT Michigan and

22

covertly record conversations with its staff. The Court should not be mislead. AFT Michigan was not "told" it could not obtain the information it seeks with regard to certain donors.

3.    Speculation about "Privilege"

Project Veritas asserts that it is entitled to keep secret the names of its employees and agents. It raises a wholly pointless objection regarding information that may not exist: "The document requests attached to the Subpoena seem engineered to be as overly broad as possible to elicit such privileged and/or confidential information..."

AFT Michigan has not asked for privileged information. It has sought documents. The Federation does not know what these documents will reveal with regard to Project Veritas' staff of spies. But the document request is not "engineered' to reveal any such information. And Project Veritas does not identify what "privileged" information is in dispute. Its objection is speculative and without merit.

F.    The Request for Sanctions

Project Veritas' request for rule 11 sanctions barely deserves a reply. The request is premised on a falsehood; that AFT Michigan has sought information which it was told it could not have. That contention is, as noted, flatly wrong. Project Veritas has attempted to mislead the Court with regard to the scope of the decision of the Magistrate Judge by distorting the decision and ignoring the rather significant fact that Project Veritas lost. The Court should reject the Defendant's request out of hand.

## Conclusion

The Court should transfer this motion to the Eastern District of Michigan for consideration and decision. However, if the Court elects to decide the matter, it should conclude that the motion

is premature and not ripe as no one knows if disputed documents exist. But if the documents do

exist, AFT Michigan is entitled to see those which reveal the identify of persons who encouraged,

organized, supported or financed the fraud, trespass and unlawful infiltration of the Federation of

Teachers.

/s/ Mark H. Cousens
Mark H. Cousens
Attorney for Respondent - AFT
Michigan
26261 Evergreen Road, Suite 130
Southfield, Michigan 48076
248-355-2150
Fax: 248-355-2170
cousens@cousenslaw.com

### Certification

I certify that the brief submitted here complies with L.R. 7.1(d)(2) and contains 6434 words as
determined by the WordPerfect word processing program.

/s/ Mark H. Cousens
Mark H. Cousens
Attorney for Respondent - AFT
Michigan